■ MERRICK GABLES ASSOCIATION et al., Appellants, v F. FIELDS, as Building Inspector of the Town of Hempstead, et al., Respondents.—In a proceeding pursuant to CPLR article 78, *inter alia,* to review a determination of the Board of Zoning Appeals of the Town of Hempstead, dated October 8, 1985, granting Costas Poulikidis' application for a variance, the petitioners appeal from an order and judgment (one paper) of the Supreme Court, Nassau County (Lockman, J.), dated May 29, 1987, which denied their motion for summary judgment, and, upon searching the record, dismissed the petition.

Ordered that the order and judgment is affirmed, with costs to the respondent Costas Poulikidis.

The respondent Costas Poulikidis purchased the Merrick

Gables Theater, a two-story structure, and the land upon which it was situated, in or about July 1984. He intended to develop the building into stores and office space. The land upon which it was situated was bordered by three streets. It ran approximately 200 feet along Merrick Road, 187 feet along Lincoln Boulevard and 167 feet along Fox Boulevard. The 200 feet along Merrick Road was zoned business for a depth of 100 feet. The remaining strip of the property extending between Lincoln and Fox Boulevards was zoned residential. The petitioners were neighboring homeowners who were opposed to the conversion of the theater into stores and offices.

The movie theater and six abutting stores were constructed around 1931. The theater owner was granted permission to build, but no permission to park was sought because there had been no provision in the zoning ordinance which prohibited off-street parking. The code provisions requiring a certain number of parking spaces in conjunction with specific footages of business uses were first adopted in 1957. A portion of the building, 7.73-feet wide and 80-feet long, was extended into the residentially zoned plot at the rear as a result of a permit to the theater owner. In 1958, the stores were converted with the town's permission into office space for the theater. In 1960, additional land was purchased by the theater owner in the northwest corner which the town approved for use as a parking field and the town also permitted construction of a parking field in the residential zone behind the theater. Ownership of the parcel was with one person until Mr. Poulikidis bought it in 1984.

On September 7, 1984, Mr. Poulikidis applied for a building permit, proposing the work to be done as "Alteration to existing stores—remove exist[ing] partitions & erect new part[itio]ns, install new steel beams & new conc[rete] floor slab. New storefronts". He was granted the permit on November 2, 1984, and renovated the front office space of the building into four stores.

On September 17, 1984, Mr. Poulikidis sought a permit to "Convert existing theater to 2 floors of office space". This application related to the rear of the building where the auditorium was located and specified that there were 51 off-street parking spaces on the property. This was an insufficient number of spaces under the code for the square footage proposed to be used as stores and offices and the Building Inspector denied the application. Mr. Poulikidis sought a variance from the Board of Zoning Appeals for "insufficient offstreet parking".

A public hearing was held on April 24, 1985. It was demonstrated that Mr. Poulikidis purchased the building and land for $1,230,000, subject to an $875,000 mortgage. He had spent $300,000 to renovate the front of the building into stores, and the remaining restoration costs were estimated to be $700,000. The property was surrounded on all sides, and up and down Merrick Road, by other commercial establishments. Mr. Poulikidis intended to add 10,944 feet of office space to the already existing 6,022 feet of store space in front, so that the total square footage for the business use of the space would be 16,966, which requires 84 parking spaces under the zoning ordinance (see, Building Zone Ordinance of Town of Hempstead § 319 [A] [8], [12]) to service the businesses therein, of which only 52 had been provided in the parking lots abutting the building. Fifteen spaces could be provided in on-street parking in the front-yard setback area, and the rest could be added to the rear parking lot behind the building (which was zoned residential). Mr. Nelson, a real estate appraiser and broker, opined that Mr. Poulikidis' proposed conversion to offices and stores would be a less intensive use of the property than the theater in relation to the need for parking. He stated that Mr. Poulikidis would lose his substantial investment in the property if denied the variance, because, without the office space, the property would not generate any return on his investment. Moreover, Mr. Poulikidis would lose between $500,000 and $550,000 if he was forced to tear down the existing building and replace it.

The petitioners objected to the application, claiming that once the theater was sold, the property on which the parking lot was situated reverted back to residential zoning. They also asserted that the proposed parking would greatly increase traffic, would endanger the safety of the children and senior citizens in the area, would set a precedent for overdevelopment in the area, would increase competition for already scarce parking spaces, and would devalue the neighbors' properties. When pressed by the Chairman of the Board of Zoning Appeals (hereinafter the board) about possible alternative uses for the property, the petitioners recommended that the building be demolished.

The board granted the application for a variance. It noted that the use of the rear residential zone for parking had been permitted in 1960, and that parking must be allowed on this residential plot which abutted a business zone where stores and offices were permitted as of right under the code. The parking in the front-yard setback was allowed because it was

a common use on Merrick Road, and would in fact benefit the community. The board determined that denial of the variances for off-street parking would result in the demolition of this building with a significant economic loss to the applicant and practical difficulties. In order to accommodate the neighbors' concerns, the variance for off-street parking was granted subject to the reduction of proposed office space by 2,500 square feet. Therefore, the parking spaces would be reduced to 74.

A motion by the respondents to dismiss the petition was initially granted by the Supreme Court, Nassau County (Lockman, J.), in a judgment dated June 19, 1986, but, upon reargument, the court vacated this judgment and held a final determination in abeyance pending submission by the board of further findings of fact. The court had determined that the board failed to consider whether that portion of the building which was located upon residentially zoned property had been abandoned and whether the variances sought were area or use variances.

Upon remittitur, the board found that the building's extension upon residentially zoned land was a permitted use because the theater owner had been granted a variance in 1931 to move the rear wall of the structure 7.73 feet onto the residentially zoned plot behind it. The board determined that the use of the theater became nonconforming as to off-street parking when the off-street parking ordinance was passed in 1957, and that this nonconformity related solely to deficiency in off-street parking. The board further found that there had not been an abandonment of the nonconforming use, since the structure continued to exist and to enjoy lawful status with respect to its physical dimensions. Finally, the board determined that an off-street parking variance was an area variance because the code related the number of spaces to the floor area of the proposed use.

Thereafter, the petitioners moved for summary judgment on the petition. They claimed, *inter alia,* that the Building Inspector and the Building Department of the Town of Hempstead had exceeded their authorities under the zoning ordinance when they granted Mr. Poulikidis permission to build stores, and that the board's granting of the variances for parking spaces was arbitrary and capricious.

By order and judgment dated May 29, 1987, Judge Lockman denied the petitioners' motion, and, upon searching the record, dismissed the proceeding.

We find that the action by the court in searching the record and dismissing the proceeding in favor of the nonmoving party was proper under CPLR 3212 (see, Andre v Pomeroy, 35 NY2d 361). With respect to the issues raised by the petitioners, it is clear that there were no issues of fact to be resolved by the court and that the granting of summary judgment to the nonmoving party was proper. Moreover, we note that the respondents had adduced their proof upon their earlier motion to dismiss the petition, a decision which had been held in abeyance pending remittitur to the board.

Upon judicial review of a board's decision after a hearing, the issue presented for the court's consideration is limited to whether the decision was supported by substantial evidence upon the entire record (see, CPLR 7803 [4]; Matter of Purdy v Kreisberg, 47 NY2d 354).

In the case at bar, the Building Inspector had the power and authority under Building Zone Ordinance of the Town of Hempstead § 255 to enforce the provisions of the ordinance. Inasmuch as it is clear that stores were a permitted use in this building, either by grant from the board in 1931, or under the code provisions for business districts, the Building Inspector did not abuse his discretion in granting the permit.

Furthermore, the board's decision that there had not been an abandonment of the nonconforming use was supported by substantial evidence on the record that there had not been a complete cessation of that use (see, Matter of Marzella v Munroe, 69 NY2d 967). The evidence demonstrated that Mr. Poulikidis intended to continue the use of the structure as a business and to continue to use the parking lot in conjunction with that business use.

Moreover, the board also properly determined that the variances for insufficient parking spaces were area variances under the scheme of the Building Zone Ordinance of the Town of Hempstead (see, Building Zone Ordinance of Town of Hempstead § 319; Matter of Off Shore Rest. Corp. v Linden, 30 NY2d 160; Matter of Overhill Bldg. Co. v Delany, 28 NY2d 449). Therefore, Mr. Poulikidis was required to demonstrate that he would suffer practical difficulties if he was held to strict compliance with the zoning ordinance (see, Matter of Martirano v Zoning Bd. of Appeals, 87 AD2d 820, affd 57 NY2d 867). Inasmuch as he demonstrated that the denial of the variances would require the removal of the existing building and erection of a new one, the board's granting of these area variances was supported by substantial evidence in the record (see, Human Dev. Servs. v Zoning Bd. of Appeals, 67 NY2d 702).

We find that the petitioners' remaining contentions are without merit. Thompson, J. P., Spatt, Sullivan and Harwood, JJ., concur.